FILED
03 AUG 25 AM 9:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE HOLMES; CLARENCE WILLIAMS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CV 01-B-2771-S ) ) |
| SLOSS INDUSTRIES CORP., | ) ) |
| Defendant. | ) ) |

ENTERED
AUG 25 2003

# MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 14.)[1] Plaintiffs Willie Holmes and Clarence Williams have sued their employer, defendant Sloss Industries, alleging that defendant discriminated against them on the basis of their race and their age in violation of federal law. Plaintiffs allege that defendant "denied [them] positions in [defendant's] apprenticeship program," and "[w]hite employees under the age of 40 were selected over plaintiffs to fill positions in the apprenticeship program." (Doc. 1 ¶ 8.) They also allege that "defendant's administration of the apprenticeship program and/or the eligibility criteria (including testing requirements) of the program have a disparate impact on the protected class of African American employees. (Id. ¶ 19.) Defendant has filed a Motion for Summary Judgment, asking the court to dismiss plaintiffs' claims because they are "barred by the applicable statute of

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.



limitations." (Doc. 14.) Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 14), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met this burden, Rule 56(e) requires the non-moving parties to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving parties is to be believed and all justifiable inferences are to be drawn in their favor. *See id.* at 255. Nevertheless, the non-moving parties need not be given the benefit of

every inference but only of every reasonable inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. **STATEMENT OF FACTS**

Defendant operates an industrial complex that manufactures coke and slag wool products. (Doc. 15, Ex. E ¶ 4.) Plaintiffs are African-American males over the age of 50; defendant hired both plaintiffs in 1969. (Doc. 15, Ex. A at 7, 38; Ex. B at 35; Ex. E ¶ 5.) Throughout their employment, plaintiffs have worked as hourly, bargaining-unit employees; the terms and conditions of their employment with defendant have been subject to the collective bargaining agreement between defendant and plaintiffs' union, Local 12014 of the United Steelworkers of America. (Doc. 15, Ex. E ¶¶ 5-7, and exs. 1, 2.)

Defendant employs journeymen craftsmen to perform craft functions at the three plants within its complex. (*Id.* ¶ 8.) Defendant and Local 12014 had an apprenticeship program in the 1960's and 1970's, in which apprentices received academic and on-the-job training leading to journeyman status.[2] (*Id.*) In the early 1980's, the apprenticeship program was terminated. (*Id.*) Between the closing of the apprenticeship program and 1994, defendant met its needs for skilled craft workers by journeymen craftsmen from outside the facility. (*Id.*)

---

[2]"In general usage, a journeyman is 'a worker who has learned a handicraft or trade, distinguished from apprentice, foreman and master.' WEBSTER'S NEW INT'L DICTIONARY, G.C. Merriam Co. (2d ed.1941), p. 1342. Likewise, an apprentice is 'one who is learning.' *Id.* at 133." *Plumber, Steamfitter and Shipfitter Industry Pension Plan & Trust v. Siemens Building Technologies Inc.*, 228 F.3d 964, 971 (9th Cir. 2000).

In 1994, defendant re-introduced an apprenticeship training program. (*See id.*, ex. 3.) Under this program, a Joint Apprenticeship Committee was constituted with members from both defendant and the union. (*Id.* at D0321.) The committee was responsible for developing the content of a "renewed" apprenticeship program, as well as developing the appropriate screening devices to insure that qualified candidates were selected. (*Id.* at D0322.) The Committee selected the apprentices and monitored their progress throughout the program. (*Id.* at D0322-23.)

As a screening device, the committee selected the Differential Ability Test ["DAT"]. (*Id.*, ex. 4.) The DAT was administered and graded by Bessemer State Technical College ["BSTC"]. (Doc. 15, Ex. C at 15.) The Committee, in conjunction with BSTC, established the following cutoff scores on the DAT:

> To successfully pass the test, an applicant must have an overall score on all five parts of 60 or above, no single score on any part can be below 50 and mechanical reasoning score must be 80 or above.

Doc. 15, Ex. E, ex. 4 at D0330-31.)

In 1995, the Committee selected the first employees for the program – Ralph Meadows, Jack Miles, William Braddock, and Jeffery Cornelius. (Doc. 15, Ex. D at 3.) The first four employees selected were white. (Doc. 15, Ex. E ¶ 12.) The following year, the Committee selected two more employees for the program – Jerome Gant and Stephen Dunham. (Doc. 15, Ex. D at 3.) Both Gant and Dunham are white. (Doc. 15, Ex. E ¶ 13.) These were the last positions ever bid under the program. (*Id.*)

Plaintiffs bid on the positions awarded to Gant and Dunham, (*id.*), but their scores on the DAT were below the established cutoff scores, (*see* doc. 15, Ex. E, ex. 7 at 6.) They were aware in December 1996 (or early January 1997 at the latest) that they were not selected for these positions. On January 6, 1997, Holmes filed a grievance, which alleged defendant's screening and selection of qualified applicants discriminated against black employees.[3] (Doc. 15, Ex. A at 19 and ex. 4.) Holmes also filed a charge of discrimination with the EEOC, alleging race discrimination with regard to his non-selection to the program and alleging disparate impact caused by defendant's testing procedures. (*Id.*, ex. 8.) The EEOC issued Holmes a Right-to-Sue Notice on November 7, 1997. (*Id.*, ex. 9.) Holmes did not commence an action within 90 days of receipt of his right to sue notice. (*Id.* at 25-26.)

The apprenticeship program was disbanded in March 1997 in part because of Holmes's claim that the DAT had an adverse impact on African-Americans.[4] (Doc. 15, Ex. C at 15-16.) As a result of the termination of the program, the five incumbent apprentices were reassigned into other jobs. (Doc. 15, Ex. D at 4.)

Each of the five incumbents – Meadows, Gant, Dunham, Cornelius, and Braddock – filed grievances challenging defendant's decision to terminate the apprenticeship program. (*See* doc. 15, Ex. E, exs. 8-12.) Four of the incumbents – Meadows, Gant, Cornelius, and

---

[3]The union chose to pursue Holmes's grievance in arbitration. (Doc. 15, Ex. D at 3.) The grievance was denied in arbitration. (Doc. 15, Ex. A, ex. 6 at 8.)

[4]Defendant does not concede, and has never conceded, that the DAT had such an impact. (*See* doc. 15, Ex. C at 30.)

Braddock – filed a hybrid/§ 301 action,[5] charging the union with breach of its duty of fair representation and defendant with breach of the collective bargaining agreement. (Doc. 15, Ex. E, ex. 14 ¶ 2.) Ultimately, the claims of the incumbents were mediated, and defendant and the incumbents entered into a settlement agreement. In exchange for the incumbents' dismissal of their grievances and their federal lawsuit, as well as a general release, defendant agreed to pay each a lump sum and, defendant agreed "to place [Meadows, Cornelius, and Braddock][6] into the Sloss Industries Corporation Apprenticeship Program ("the Apprenticeship Program"), in the respective position each of them occupied at the time the original Apprenticeship Program was canceled." (Doc. 15, Ex. E, ex.15 at 3 (footnote added).) Defendant did not agree to reinstate the program generally. (*Id.* at 4 ("[T]his Agreement [does not] constitute a commitment by [defendant] to provide an Apprenticeship Program to anyone other than [Meadows, Cornelius, and Braddock].").)

Since approximately August 2000, the program has only existed for the three remaining incumbents. (Doc. 15, Ex. D at 5.)

---

[5] A "hybrid § 301/ fair representation claim" is so-called "because it comprises two causes of action. The first cause of action involved is against the employer for breach of the collective bargaining agreement. This claim rests on section 301 of the Labor Management Relations Act. The second claim is against the union for breach of the union's duty of fair representation. Yet the two claims are inextricably interdependent." *Coppage v. U.S. Postal Service*, 281 F.3d 1200, 1204 (11th Cir. 2002)(citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164-65 (1983); 29 U.S.C. § 185(a) (1994)).

[6] Meadows, Cornelius, and Braddock were the only remaining incumbents employed by defendant at the time of the settlement. (Doc. 15, Ex. D at 4.)

Following the settlement of the incumbents' lawsuit, plaintiffs filed grievances over the "white employees" being reinstated to the apprenticeship program. Holmes filed a grievance, in which he alleged, "I was denied my rights as a senior employee and was discriminated against by [defendant] when three less senior white employees were unilaterally placed in the apprenticeship program on . . . 8-7-2000." (Doc. 15, Ex. A, ex. 11.) Williams filed a similar grievance, which stated, "I was denied my rights as senior employee and was discriminated against by the company when three less senior white employees were unilaterally placed in the apprenticeship program on 8/7/2000." (Doc. 15, Ex. B, ex. 6.) Though the record does not provide a clear statement of any action taken on the grievances, (*see, e.g.*, doc. 15, Ex. B at 25-26 (Williams testified that he did not know the outcome of his grievance)), Joe Hall, defendant's retired Manager of Employee Relations, testified that he would have denied plaintiffs' grievances, (doc. 15, Ex. C at 33-34).

The union also filed an unfair labor practices charge with the National Labor Relations Board ["NLRB"], which stated, "During the preceding six month period, [defendant] entered into a settlement agreement with individual employees with the intent of circumventing the Union. (Doc. 15, Ex. B, ex. 5.) The NLRB determined that "further proceedings" were not warranted on the Union's charge. (Doc. 15, Ex. E, ex. 18 at 2.)

Plaintiffs filed EEOC charges alleging race and age discrimination with respect to their non-selection into the apprenticeship program in September 2000. (Doc. 15, Ex. A, ex. 12; Ex. B, ex. 7.) The EEOC issued right to sue notices to plaintiffs and they subsequently filed the instant action on October 31, 2001. (Doc. 1, doc. 15, Ex. A, ex. 13; Ex. B, ex. 8.)

## III. DISCUSSION

The sole issue before the court on defendant's Motion for Summary Judgment is whether plaintiffs' claims are timely. In *National Railroad Passengers Corp. v. Morgan*, the United States Supreme Court set forth the basic principles established in its earlier cases regarding time limitations for filing EEOC charges; the court noted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, as often noted in this Circuit, "the present consequence of a one time violation . . . does not extend the limitations period." *City of Hialeah v. Rojas*, 331 F.3d 1096, 1101 (11th Cir. 2002)(quoting *Carter v. West Publishing Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000); other citations omitted)).

Plaintiffs contend that the resurrection of the program in 2000 violated Title VII and Section 1981. They argue that "[t]he defendant's decision to reinstate three white employees into an apprenticeship program and limit participation to three white employees constitutes discrete discriminatory acts for the purposes of the statute of limitations." (Plts. Br. in Opp. to Mot. for Summ. J. at 3.)

8

The court disagrees. Plaintiffs complained that they were not selected for the program in 1996 because of their age and their race, while younger, white employees were selected. The challenged decision in the present case is the resurrection of the program for the limited purpose of allowing those younger, white employees who were in the program in 1997 when it was terminated, to complete the program. The participation in the resurrected program was limited to the incumbents, to the exclusion of all others, including plaintiffs. Plaintiffs, and all others, were excluded from the program as resurrected because of their non-selection in 1995 and 1996. The court finds that the exclusion of plaintiffs from the resurrected program is a "present consequence" of their non-selection in 1996, and not a new violation.

Therefore, the court finds that plaintiffs' claims of non-selection to the program, as resurrected, are time-barred.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this _22nd_ day of August, 2003.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
United States District Judge